MISSOURI PUBLIC SERVICE
COMMISSION, Petitioner

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent

MoGas Pipeline LLC, Intervenor

No. 13-1278

United States Court of Appeals,
District of Columbia Circuit.

Argued December 12, 2014

Decided April 7, 2015

For Majority Opinion, see 783 F.3d 310.

MILLETT, Circuit Judge, concurring:

In my view, the Commission's decision barely ekes past our deferential review. The near-fatal flaw is that the Commission persists in a bafflegab articulation of its rule for including acquisition premiums in rates. On the one hand, the Commission has said repeatedly that the prohibition on the inclusion of acquisition premiums in rates is broad and emphatic, with the benefits exception being narrow and sparingly applied. To walk that narrow path, a pipeline must "show[ ] by clear and convincing evidence that the acquisition results in substantial benefits to ratepayers." *Longhorn Partners Pipeline*, 82 FERC ¶ 61,-146, 61,542 (1998); *see also, e.g., Public Service Co. of New Mexico*, 142 FERC ¶ 61,168 P 25 (2013) (requiring "tangible and nonspeculative" "specific dollar benefits" that "are clearly related [to] and solely the result of the acquisitions") (internal quotation marks omitted); *Missouri Pub. Service Comm'n v. FERC*, 601 F.3d 581, 586 (D.C. Cir. 2010) (" 'heavy' burden" to show "benefits to consumers that are 'tangible, non-speculative, and quantifiable in monetary terms' ") (quoting *Kansas*

*Pipeline Co.*, 81 FERC ¶ 61,005, 61,018 (1997)).

On the other hand, aspects of the Commission's decision in this and some past cases seem to welcome automatically the inclusion of acquisition premiums in rates any time the pipeline shows that "(1) the acquired facility is being put to new use, and (2) the purchase price is less than the cost of constructing a comparable facility." *Enbridge Pipelines (S. Lights) LLC*, 121 FERC ¶ 61,310 P 38 (2007) (quoting *Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533, 536-537 (D.C. Cir. 1999)). Beyond any findings underlying a certificate of public convenience and necessity, the Commission seems to indicate that no showing of actual desire or demand *by customers* for the refurbished service need be made, or even that a *new* pipeline would actually have been built.

Whither that prior insistence on clear and convincing evidence of actual, substantial and direct benefits to ratepayers?

Here the Commission says the benefit is that the rates "will be no higher, if not somewhat lower, than if the pipeline built new facilities." *Missouri Interstate Gas, LLC* ("*Remand Order*"), 142 FERC ¶ 61,-195 P 113 (2013). That is not the same as an actual, substantial benefit at all. And if that articulation actually captured the Commission's position, what began as a clear requirement that a substantial affirmative benefit be shown would have transmogrified into a "no harm, no foul" rule, without an explanatory word being uttered by the Commission.

Also seemingly overlooked by the Commission is the simple proposition that cheaper is not always better. In this case, the ratepayers got a refurbished, 50-year-old pipeline paired with the feeble assurance that the cost to them will be "no higher" than it would be for a brand new pipeline. But not many people would em-

brace as a "substantial benefit" a recycled, 50-year-old hand-me-down for which they were charged the same price as (or "no higher" than) brand new.

What saves the Commission is that, as the court's opinion notes, *see* Op., 783 F.3d 310, 316, 318–19, a careful reading of the agency decision shows some actual benefit to ratepayers. While the Commission did not repeat its analysis in detail here, it did expressly rely on its earlier findings in issuing a certificate of public convenience and necessity that the proposed service would provide a number of benefits specifically to Missouri customers. Those benefits include improving the reliability and diversity of natural gas supply in the State and increasing competition. *See Missouri Interstate Gas, LLC* ("*Rehearing Order*"), 144 FERC ¶ 61,220 P 49 & n.86 (2013); *Missouri Interstate Gas, LLC*, 100 FERC ¶ 61,312 PP 14–18 (2002). Importantly, petitioner never sought review of those prior findings, so both petitioner and this court are bound by them.

In addition, the record (just barely) documents the connection the Commission made between the avoided construction costs and anticipated lower rates for pipeline customers. *See Wisconsin Pub. Power, Inc. v. FERC*, 493 F.3d 239, 273 (D.C. Cir. 2007) ("Although FERC's wording may have been less than precise on this point, the agency's path may reasonably be discerned[.]"). As the Commission noted on rehearing, that cost differential will translate into a rate base that is lower than it would have been had a comparable pipeline been constructed, and it is that rate base that will serve as the foundation for

the rates charged. *Rehearing Order* at P 55 n.93 (2013).[1]

To the extent there *could be* any question regarding the directness with which that reduction in the rate base would translate into lower prices for shippers, it would stem from distinct subsidization concerns that could arise if the Commission permitted the pipeline to charge customers a rate not linked directly to use of the new segment without measures in place to mitigate this risk. That scenario would distinguish this case from *Natural Gas Pipeline Co. of America*, 29 FERC ¶ 61,073 (1984), where the Commission specifically noted that charging rates for a newly acquired pipeline segment on an incremental basis ensured that the company, and not its customers, "b[ore] the risk of project failure or insufficient throughput." *See id.* at 61,151.

Here, however, the Commission addressed concerns regarding potential subsidization specifically in its 2007 rehearing decision approving the merger that created MoGas Pipeline, LLC. *See Missouri Interstate Gas, LLC*, 122 FERC ¶ 61,136 PP 67–75 (2008). No meaningful challenge to the rate design aspect of the Commission's decision or its implications for the benefits exception has been pressed here.

As a result, the court's opinion decides only that permitting the inclusion of an acquisition premium in the rates on this record in a Section 7 proceeding, 15 U.S.C. § 717f, was a tolerable application of the Commission's benefits exception. This decision says nothing about whether a future premium would or would not be sustainable if the subsidization argument were pressed and the measures the Commission

---

1. While the Commission's precedent requires that the substantial benefit be established by "clear and convincing evidence," this court's review remains deferential. Because the Commission correctly identified the applicable "clear and convincing" standard, *see Rehear-* *ing Order* at P 35; *Remand Order* at P 44, this court reviews any findings of fact made pursuant to that standard only for substantial evidence. *See Sea Island Broadcasting Corp. of South Carolina v. FCC*, 627 F.2d 240, 244 (D.C. Cir. 1980).

took to address that risk were found wanting. Nor do we address whether future rates can be challenged on that ground in a Section 4 rate-setting proceeding, 15 U.S.C. § 717c.

More fundamentally, nothing in our decision today should be held as authorizing the Commission, going forward, to approve the inclusion of acquisition premiums based solely on a determination that rates for the refurbished pipeline will be "no worse than" if a new, modern pipeline had been built. If the Commission wishes to spell the demise of the strict actual-benefits test of past precedent and replace it with a wooden "new use plus marginally cheaper than new" rule, it must be up front about what it is doing and grapple directly with the question whether the statutory and regulatory framework and past precedent permit such a regulatory metamorphosis.